## WOO POY LIM v. NAGLE, Commissioner of Immigration.

### No. 6554.

Circuit Court of Appeals, Ninth Circuit.

Jan. 11, 1932.

Russell P. Tyler, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and I. M. Peckham, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

This is an appeal from an order dismissing appellant's petition for a writ of habeas corpus. Woo Poy Lim claims the right to be admitted into the United States as a son of Woo Goong Gam, whose citizenship is conceded. The immigration authorities denied the application of the appellant for admission and rejected the evidence offered in his behalf on the ground of discrepancies between his testimony and that of his alleged father and alleged brothers.

The appellant testified that one of his brothers, Woo Poy Soon, was married and lived with his wife, Chin Shee, and one son, named Woo Bok Woon, aged 10, in appellant's home in China, while the alleged father and the two previous landed brothers testified that Woo Poy Soon had three sons and one daughter by his wife, Chin Shee, and that he had not previously or subsequently married any other person. This contradiction in the testimony is freely admitted, but it is claimed that the appellant may have inadvertently omitted to mention the other two sons and the daughter of his alleged brother, because of the fact that his answer was voluntary and was not responsive to the question, and that, if the matter had been called to his attention or the subject had been pursued further, an explanation for the discrepancy might have been made. It is therefore claimed that the denial of a fair hearing resulted more especially from a failure to further examine the appellant than because of the rejection of the testimony of the witnesses on the ground of discrepancies. The questions and answers given thereto by appellant are as follows:

"Q. Has Woo Poy Soon ever been married? A. Yes.

"Q. Describe his wife. A. Chin Shee, 29 years old, living in my father's house. They have one son named Woo Bok Woon, aged 10, no daughters."

It appears, however, that this is not the only instance in which appellant testified on the subject. He was asked: "Q. What were the sleeping arrangements in your house while your father was last in China? A. My parents, my brothers, Poy On, Poy Dong, occupied the bedroom on the east side; my second brother's family, consisting of a wife and one son, occupied the bedroom on the west side; I occupied the same room with my parents. This was before my marriage. After my marriage, my parents, my brother Poy On and Poy Dong occupied a partitioned off bedroom in the parlor; I occupied the bedroom on the east side; my second brother's family occupied the bedroom on the west side."

He was further questioned in regard to his correction of his testimony with regard to sleeping arrangements when his father was

last in China; that is, from September, 1927, to May, 1929, as follows: "Q. I will ask you to again give the sleeping arrangements in your house while your father was last in China, both before and after your marriage. A. Before my marriage my parents and Poy On occupied the bedroom on the east side; my brother Poy Soon, his wife and son occupied the bedroom on the west side. After my marriage, my wife and I occupied the bedroom on the east side and my parents and brother Poy On occupied a room partitioned off in the parlor; my brother Poy Soon, his wife and son occupied the bedroom on the west side."

It would soon appear from this evidence that the statement that his brother Woo Poy Soon had only one son and no daughters was not an inadvertence. It was suggested by appellant on the argument that the other two sons and the daughter may have been the children of a concubine. This, however, would be inconsistent with the testimony of the alleged brothers of the appellant. For instance, the prior landed brother Woo Poy Dong testified as follows: "Q. What were the sleeping arrangements in your father's house while he was last in China? A. Poy Lim and his wife occupied the large door bedroom; my brother Poy Soon's wife and 3 sons and 1 daughter occupied the west bedroom; my mother and my younger brother Poy On occupied the partition room of the parlor."

Appellant testified that neither Woo Poy Soon nor his wife had been married more than once, that they had always lived in the house of appellant's father, and that Woo Poy Soon never had had any children who died. Appellant's alleged father testified that Woo Poy Soon had three sons and one daughter; that neither he nor his wife had ever adopted any children; that neither had ever been married before; that they have had no children who died; that *they* had three sons and one daughter; that the sons and the daughter have always lived in the house occupied by the appellant, and that the names and ages of the sons and daughter are as follows:

"Q. Give the names and ages of his (Woo Poy Soon's) children. A. Sons are: Woo Bok Woon, 10 years old; Woo Siu Soon, 6 years old; Woo Ging Shan, 5 years old; daughter: Woo Kow Woom, 9 years old."

In addition to this discrepancy, the applicant testified that he had never studied English, while his alleged brother testified that he and the applicant went to school together for three years and that he studied English

for two years and the applicant studied English for three years.

Under the well-established rule with reference to discrepancies, we cannot say that the appellant was denied a fair hearing.

Order affirmed.